IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATASHA TOWNSEND, | ) | CASE NO.1:14-cv-02700 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MARC KNIPPER, et al., | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondents. | ) | |

Petitioner, Natasha Townsend ("Petitioner" or "Townsend"), acting *pro se*, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 10, 2014,

challenging the constitutionality of her conviction in *City of Cleveland v. Natasha Townsend*,

Case No. 2012 CRB 018014 (Cleveland Municipal Court 2012).  Doc. 1 ("Petition").[1]

Townsend summarizes the conduct that led to her being charged in two misdemeanor

complaints as follows:

> Natasha Townsend ("Townsend") went to the Cleveland Hopkins International
> Airport to pick up her relatives. She encountered a City of Cleveland ("City")
> police officer directing traffic.  After this encounter, she disobeyed his direct
> lawful orders; thereupon, he issued her a parking ticket.  Furious with the
> parking ticket, Ms. Townsend became loud, defiant, uncooperative, non-compliant, and
> even more disobedient to this officer.  She was so disorderly, the officer had to
> call backup for help.  Her behavior was so combative, demonstrative, and such an
> egregious act; it took three male officers to effect arrest, to the point of almost

---

[1] In her Petition, Townsend named the following individuals as Respondents – Marc Knipper, Probation Officer for the City of Cleveland; Jerome Krawkowski, Chief Probation Officer for the City of Cleveland; Barbara Langhenry, Law Director for the City of Cleveland; and Michael Dewine, Attorney General for the State of Ohio. Doc. 1, pp. 1, 16, 19.  The Attorney General filed a response indicating that he has no interest in the present case because Townsend was only subject to a municipal penalty and Townsend was not and would never be remanded to the custody of a state institution based on the convictions upon which her federal habeas corpus petition in this case was based.  Doc. 12.  Townsend filed a Reply, acknowledging the Attorney General's response and requested that the Court allow joinder of the Attorney General if doing so would serve the ends of justice.  Doc. 15.  The undersigned finds that the City of Cleveland Respondents are the proper Respondents and joinder of or requiring a further response from the Attorney General of the State of Ohio is not necessary before proceeding with issuance of a report and recommendation regarding Townsend's Petition.

1

breaking her arm and tasing her, in the middle of the roadway of the baggage claim area.

Doc. 1-5, p. 7 (Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus and Request for Motion to Show Cause, Introduction).

Following a jury trial, Townsend was found guilty of Failure to Comply and Resisting Arrest as charged in two criminal complaints.  Doc. 18-1, p. 373.  At sentencing, the trial court imposed a fine of $1,000 and a jail term of 180 days for failure to comply and a fine of $750 and a jail term of 90 days for resisting arrest.  Doc. 18-1, pp. 327-328, 373.  The trial court placed Townsend on two years active probation and ordered 75 hours of Community Work Service.[2] Doc. 18-1, p. 328.  On November 4, 2014, the trial court continued probation until March 31, 2015.  Doc. 18-1, p. 17 (Cleveland Municipal Court docket).

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

In their June 27, 2016, Reply to Townsend's Traverse, Respondents contend that this Court lacks jurisdiction, arguing that, "on May 1, 2015, Townsend's probation was terminated upon the completion of her probationary conditions . . . [and therefore] because she is no longer on probation, she is not 'in custody' for purposes of § 2254 . . . [and] Townsend's petition is moot because this Court does not have jurisdiction if the applicant it not in custody."  Doc. 26, p. 2.  However, "so long as the petitioner was in custody when the writ was filed, the *habeas corpus* court has jurisdiction, which it retains pending final disposition of the case."  45 Geo.L.J.Ann.Rev.Crim.Proc. 1024, n. 2768 (2016) (citing *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968)); *see also Lawrence v. 48th Dist. Court*, 560 F.3d 475, 479 (6th Cir. 2009) ("Whether a habeas petitioner is 'in custody' is determined at the time of the filing of the petition.") (citing

---

[2] "Probation's restraints on liberty suffice to satisfy the 'in custody' requirement [of § 2254.]  *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 480-81 (6th Cir. 2009) (internal citations omitted).

2

*Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001) (citing *Carafas*, 391 U.S. at  239-40).

Thus, since there is no dispute that, at the time Townsend filed this federal habeas petition, she

was on probation for the convictions upon which she seeks federal habeas relief, the "in custody"

requirement of § 2254 was met and jurisdiction attached at the time Townsend filed her Petition.[3]

For the reasons set forth below, the undersigned recommends that the Court **DISMISS**

and/or **DENY** Townsend's Petition (Doc. 1).  Townsend's requests for an evidentiary hearing

and discovery (Doc. 25-2, pp. 6-8) are **DENIED**.

## I.      Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied*, 129 S. Ct. 2878 (2009).

The Ohio Court of Appeals summarized the facts underlying Townsend's conviction as follows:

> {¶ 3} The facts presented at trial were as follows: On June 2, 2012, Cleveland
> police officer Robert Zubek was directing traffic at Cleveland Hopkins
> International Airport on the lower baggage claim roadway when he encountered
> Townsend driving a minivan. Townsend arrived at the airport to pick up her
> sister. Officer Zubek and Townsend spoke. Officer Zubek testified that he
> informed Townsend that she could not leave her vehicle unattended outside the
> baggage claim area and that she needed to park in the parking garage if she
> intended to go inside the airport. Pursuant to Transportation Security
> Administration ("TSA") safety regulations and mandates, no vehicles are
> permitted to be stopped or unattended near the terminal. Signs informing drivers
> of this mandate were posted throughout the area. Townsend testified that Officer
> Zubek instructed her to park outside the baggage claim area in contravention of
> the mandate.
>
> {¶ 4} The baggage claim area was congested during this time, and Officer Zubek
> continued to direct traffic. Shortly after speaking with Townsend, Zubek observed
> a minivan parked and unattended at the curb. No one nearby claimed the vehicle.

---

[3] The issue of mootness is distinct from the issue of jurisdiction. *Sevier v. Turner*, 742 F.2d 262, 268-69 (6th Cir. 1984).  However, Respondents' mootness argument, first raised in their Reply brief, is premised on a lack of jurisdiction.

Officer Zubek issued a parking ticket and proceeded to have the owner of the vehicle paged by airport personnel. Officer Zubek waited ten minutes before beginning the procedure to tow the vehicle. He pulled his zone car up next to the minivan and turned on the overhead lights. At that point, a female exited the airport yelling, "What are you doing to my van?" Officer Zubek recognized the female as Townsend, from their earlier conversation.

{¶ 5} Officer Zubek informed Townsend that he intended to cite her for failure to comply with his earlier parking instructions. To this end, Officer Zubek demanded her driver's license. Townsend refused to provide her license, and she entered the minivan, despite Officer Zubek informing her that he would arrest her if she refused his request. After three requests for Townsend's license, Officer Zubek called for backup. Townsend attempted to close the minivan door, but Zubek physically stopped her. As backup arrived on the scene, Officer Zubek informed Townsend that she was under arrest, and he ordered her to step out of the vehicle. Townsend refused and had to be forcefully removed. In the process of effecting the arrest, Townsend smacked Officer Zubek's arm away and shoved him back against his car. Townsend attempted to flee but was taken to the ground by Officer Zubek and another officer. Townsend struggled with the officers, preventing them from handcuffing her on the ground. Only upon threat of being subdued by a taser did Townsend submit to arrest.

*Cleveland v. Townsend*, 2013 WL 6571825, * 1, 2013-Ohio-5421, ¶¶ 3-5 (Ohio App. Dec. 12, 2013).

## II.     Procedural Background[4]

### A.     State Conviction

On June 5, 2012, a criminal complaint was filed against Townsend in the Cleveland Municipal Court charging Townsend with resisting arrest, to wit: "pushed officers away and ran" on or about June 2, 2012.  Doc. 18-1, p. 19.  Also, on June 5, 2012, a criminal complaint was filed against Townsend in the Cleveland Municipal Court charging Townsend with failure to comply with order/signal of a police officer, to wit: "left van unattended and refused to move van 30 minutes at airport" on or about June 2, 2012  Doc. 18-1, p. 20.

On June 19, 2012, Townsend, acting *pro se*, filed a motion to dismiss, arguing that the

---

[4] Records pertaining to the procedural history have been filed with various pleadings in this case.  The citations herein refer primarily to records filed in connection with the Petition (Doc. 1) and the Return of Writ (Doc. 18).

4

charges against her should be dismissed on the grounds that the prosecution was barred by the doctrines of double jeopardy and collateral estoppel.  Doc. 18-1, pp. 21- 24.  On June 5, 2012, Townsend appeared in court regarding a June 4, 2012, misdemeanor criminal charge of refusal to display license that occurred on June 2, 2012.  Doc. 18-1, pp. 22, 40-42.  The trial court dismissed the charge concluding that Townsend's license was valid.  Doc. 18-1, p. 41.  The disposition was "no contest, not guilty."  Doc. 18-1, p. 41.  In her motion to dismiss, Townsend argued that, since the subsequent June 5, 2012, charges arose from the same June 2, 2012, occurrence that resulted in the June 4, 2012, charge that had been dismissed, her rights under the double jeopardy clause were being violated.  Doc. 18-1, p. 22.   The City filed a response to the motion to dismiss and Townsend filed a reply. Doc. 18-1, pp. 6, 45.

On June 20, 2012, Townsend entered a plea of not guilty to the failure to comply with order/signal of a police officer and resisting arrest charges.  Doc. 18-1, p. 5.  Also, on June 20, 2012, Townsend filed a motion for discovery, motion for bill of particulars, and request for specific intention to use evidence.  Doc. 18-1, p. 5.

On July 10, 2012, Townsend, acting *pro se*, filed a motion to preserve evidence, requesting that evidence obtained in her case be preserved, including:

1. Any and all recorded statements made by the Defendant and/or Officers involved in the instant case, including 911 tapes;

2. Any and all videotapes, audiotapes, DVD that may not have been used in charging the Defendant;

3. The arresting officer's videotape/DVD from his/her in car camera from June 2, 2012 and/or any booking room videotape/DVD.

Doc. 18-1, p. 25.

On July 17, 2012, a hearing was held on Townsend's June 19, 2012, motion to dismiss the charges on the basis that charging her with resisting arrest and failure to comply with

5

order/signal of police officer following a not guilty finding on a charge of failure to display license amounted to a violation of double jeopardy. Doc. 18-1, pp. 45, 47-63.   The court found no violation of the double jeopardy clause and denied Townsend's motion. Doc. 18-1, pp. 7, 47-63.

On July 26, 2012, a notice of appearance was filed by attorney John Parker on behalf of Townsend. Doc. 18-1, pp. 8, 10.   On September 11, 2012, a hearing was conducted regarding Townsend's request for discovery of recordings from the airport on the date of the incident. Doc. 18-1, pp. 64-69.   During the hearing, the City indicated that there were either no recordings of the incident from the airport and/or video recordings at the airport were on non-scheduled rotations to be used for various purposes and were not retained for long so, if a recording had existed, it would no longer exist. Doc. 18-1, p. 66.  A jury trial was scheduled for September 28, 2016. Doc. 18-1, p. 67.

On October 2, 2012, Townsend filed a motion in limine, motion to dismiss, and motion for proposed jury instructions. Doc. 18-1, p. 11.  In the motion to dismiss, Townsend, through counsel, argued that it is not possible that there was no recording of the incident on June 2, 2012, because of the security at airports and, since no Cleveland Hopkins Airport video and/or audio recordings were produced, the case should be dismissed because the City destroyed "materially exculpatory" evidence. Doc. 18-1, pp. 26-29.  Alternatively, Townsend argued that the recordings were "potentially useful" and were destroyed in bad faith. Doc. 18-1, pp. 26-29.  In her proposed jury instructions, Townsend requested a jury instruction on the affirmative defense of "excessive force" as it related to the charge of resisting arrest. Doc. 18-1, pp. 30-39.

The jury trial commenced on October 18, 2012. Doc. 18-1, pp. 9-11, 70-325.  Prior to the trial starting, Townsend's counsel argued the motion in limine and motion to dismiss.  Doc.

18-1, pp. 73-79.  Following each side's arguments,[5] the court denied Townsend's motion in limine and motion to dismiss.  Doc. 18-1, p. 79.   The jury found Townsend guilty of failure to comply as charged in the complaint and guilty of resisting arrest as charged in the complaint. Doc. 18-1, pp. 319-321.

On November 5, 2012, a sentencing hearing was held (Tr. 325-329) and the trial court imposed the following sentence - a fine of $1,000 and a jail term of 180 days for failure to comply and a fine of $750 and a jail term of 90 days for resisting arrest (Doc. 18-1, pp. 327-328, 373).  The trial court suspended the jail terms and all but $250.00 of the fines.  Doc. 18-1, pp. 327-328, 373.   The trial court placed Townsend on two years active probation and ordered 75 hours of Community Work Service.  Doc. 18-1, p. 328.  On November 4, 2014, the trial court continued Townsend's probation until March 31, 2015.  Doc. 18-1, p. 17 (Cleveland Municipal Court docket).

**B.      Direct appeal**

With the assistance of counsel, Townsend filed an appeal with the Eighth District Court of Appeals from her convictions and, on April 26, 2013, filed her appeal brief (Doc. 18-1, pp. 330-345) setting forth the following assignments of error:

1.  The trial court erred, in derogation of Defendant's right to due process of law, as guaranteed by the 14th Amendment to the Constitution of the United States, in denying Defendant's motion to dismiss for vindictive prosecution.

2.  The trial court committed plain error in instructing the jury on the charge of failure to comply, in that the jury was permitted to base its conviction on the failure of Defendant to comply with one of two acts, one of which she had

---

[5] With respect to the motion in limine, Townsend requested that the City be precluded from inquiring into anything relating to a failure to produce a driver's license because that charge had been dismissed and Townsend did not want the jury to possibly convict her of the failure to comply charge based on a failure to produce her license as opposed to a failure to move her van.  Doc. 18-1, pp. 74-75, 78-79.  Regarding the motion to dismiss, counsel argued that it was common knowledge that there is video all over airports, the incident was captured on video, and the City had not produced the video.  Doc. 18-1, p. 76.   The prosecutor responded that there was no video and the City could not produce what it did not have and, if there was a recording that was erased because recordings are on a loop, that would not amount to willful or wanton destruction of a recording.  Doc. 18-1, pp. 77-78.

been acquitted of, in violation of Defendant's right against double jeopardy, as guaranteed by the 5th Amendment to the Constitution of the United States.

3. The trial court erred, in derogation of Defendant's right to due process of law, as guaranteed by the 14th Amendment to the Constitution of the United States, in denying Defendant's motion to dismiss for failure to preserve evidence.

Doc. 18-1, pp. 331, 333, 337-342. On June 20, 2013, the City of Cleveland filed its brief. Doc. 18-1, pp. 346-361. On December 12, 2013, the Eighth District Court of Appeals affirmed the trial court's judgment. Doc. 18-1, pp. 369-389. On January 22, 2014, Townsend, acting *pro se*, filed an application for reconsideration of the Eighth District Court of Appeals decision affirming the trial court's judgment. Doc. 18-1, pp. 362-368. On January 30, 2014, the Eighth District Court of Appeals denied Townsend's application for reconsideration. Doc. 1-1, p. 31.

Townsend, acting *pro se*, filed an appeal from the Eighth District Court of Appeals' judgment with the Supreme Court of Ohio and, in her Memorandum in Support of Jurisdiction (Doc. 1-3, pp. 2-15) filed on March 12, 2014, Townsend raised the following propositions of law:

1. A trial court's denial of a motion to dismiss and motion in limine based on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution following an acquittal is a violation of a defendant's rights.

2. A trial court's denial of a motion to dismiss based on the due process rights of the Fourteenth Amendment to the United States Constitution following a failure to preserve evidence is a violation of a defendant's rights.

Doc. 1-3, pp. 3, 10-14. On June 11, 2014, the Supreme Court of Ohio declined to accept jurisdiction of Townsend's appeal.

Townsend filed a petition for writ of certiorari with the Supreme Court of United Stated on September 8, 2014. Doc. 1-4, p. 2. Townsend's petition for writ of certiorari was placed on the docket of the Supreme Court of the United States on October 28, 2014, as No. 14-6877. Doc.

1-4, p. 2.  On January 12, 2015, Townsend's petition for writ of certiorari was denied.[6]

## C.    Federal habeas corpus

On December 10, 2014, Townsend, acting *pro se*, filed her Petition asserting four grounds for relief.[7]  Doc. 1.  Respondents filed a Return of Writ/Answer.[8]  Doc. 18.  Petitioner filed a Traverse.  Doc. 20, Doc. 25.  Respondents filed a Reply to Petitioner's Traverse.  Doc. 26. Each ground for relief is discussed more fully below in Section III.C.

## III.    Law and Analysis

## A.    Standard of Review under AEDPA

The provisions of the Antiterrorism and  Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state

---

[6] *See* https://www.supremecourt.gov/search.aspx?filename=/docketfiles/14-6877.htm (last visited 9/29/2016)

[7] Townsend included with her Petition a Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus and Request for Motion to Show Cause (Doc. 1-5) and various state court records (Docs. 1-1, 1-2, 1-3, 1-4, 1-6).

[8] Respondents attach an affidavit to their Return of Writ/Answer from Fred Szabo, Commissioner of the Cleveland Hopkins International Airport.  Doc. 18-2.  The affidavit was not part of the state court record and there has been no request to expand the record to include the affidavit.  Accordingly, the affidavit has not been considered.

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. 86, 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.     Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[9]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th

---

[9] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state

12

court, and pursue that claim through the state's 'ordinary appellate review procedures.'"
*Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also*
*Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and
every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see*
*also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of
appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer
allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d
at 806.  While the exhaustion requirement is technically satisfied because there are no longer any
state remedies available to the petitioner, see *Coleman v. Thompson*, 501 U.S. 722, 732 (1991),
the petitioner's failure to have the federal claims considered in the state courts constitutes a
procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual
prejudice that resulted from the alleged violation of federal law or that there will be a
fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.
"'[C]ause' under the cause and prejudice test must be something external to the petitioner,
something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a
procedural default must ordinarily turn on whether the prisoner can show that some objective
factor external to the defense impeded counsel's efforts to comply with the State's procedural
rule."  *Id.*   "A fundamental miscarriage of justice results from the conviction of one who is
'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v.*
*Carrier*, 477 U.S. 478, 496 (1986).

13

**C.**     **Grounds for relief**

**1.  Ground  One**

**Ground One**: Denial of a motion to dismiss based on Double Jeopardy and Collateral Estoppel protections unde[r] the 5th and 14th Amendments, following an acquittal is a violation of a defendant's rights.

**Supporting Facts**: Ms. Townsend was initially cited with a parking ticket and then arrested on June 2, 2012, at Cleveland Hopkins International Airport.  She was then cited with Failure to Display License in Case No. 2012 TRD 033289 in the Cleveland Municipal Court and was acquitted of this charge on June 5, 2012.  Outside the post-trial setting, the City charged her with Failure to Comply and Resisting Arrest in Case No. 2012CRB01801.  The parking ticket, and both cases arise from the same event, occurrence, and transaction; including multiple punishments.  On July 17, 2012, the trial court denied the motion to dismiss.

Doc. 1, p. 5.

Townsend did not include her Ground One claim in the three assignments of error raised with the state court of appeals.[10]  Thus, Ground One may be subject to dismissal due to procedural default.  *See  Williams*, 460 F.3d at 806 (explaining that "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.") (citing *O'Sullivan*, 526 U.S. at 848).

Nevertheless Respondents have argued the merits of Ground One.  Thus, the undersigned has considered Townsend's claim in Ground One.[11]  As discussed below, the undersigned concludes that Ground One is without merit.

---

[10] In her application for reconsideration filed with the Ohio Court of Appeals (Doc. 18-1, pp. 362-368), Townsend presented law regarding double jeopardy and argued that her second prosecution was barred because it involved relitigation of issues resolved in her first prosecution (Doc. 18-1, pp. 366-367).  In that application for reconsideration, she argued that the trial court's denial of her motion in limine denied her due process.  Doc. 18-1, p. 366.  It is in her memorandum in support of jurisdiction filed with the Supreme Court of Ohio that Townsend first presented a claim that the trial court's denial of her motion to dismiss based on double jeopardy violated her federal constitutional rights.  Doc. 1-3, p. 10.

[11] "Procedural default is not a jurisdictional bar to review on the merits[.]" *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).

In Ground One, Townsend contends that the trial court's denial[12] of her motion to dismiss on double jeopardy grounds was contrary to federal law.  Doc. 1-5, pp. 18-19.

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . .'  The clause was incorporated against the states through the enactment of the Fourteenth Amendment."  *Person v. Sheets*, 527 Fed. Appx. 419, 423 (6th Cir. 2013) (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)).  "[A] defendant may not be subject to multiple punishments unless the state legislature intended to so punish."  *Person*, 527 Fed. Appx. at 423 (relying on *Missouri v. Hunter*, 459 U.S. 359, 367-368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)).  "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'"  *Duncan v. Sheldon*, 2014 WL 185882, * 31 (N.D. Ohio Jan. 15, 2014) (quoting *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (internal citations omitted)).

As stated by the Sixth Circuit:

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[13] *Id.* at 304, 52 S.Ct. 180. The *Blockburger* test, however, is a "rule of statutory construction," *Albernaz,* 450 U.S. at 340, 101 S.Ct. 1137 (quoting

---

[12] Townsend's claim that it is the trial court's decision, not the state appellate court's decision, that is contrary to federal law further highlights the fact that Townsend did not fairly present her claim to the state court of appeals and therefore Ground One may be subject to dismissal based on procedural default.

[13] To the extent that Townsend contends that the "same-conduct" test set forth in *Grady v. Corbin*, 495 U.S. 508 (1990) is applicable and establishes a violation of her Fifth Amendment right against double jeopardy (Doc. 1-5, pp. 17, 20-22), she is mistaken.  The Supreme Court in *U.S. v. Dixon*, 509 U.S. 688, 703 (1993) overruled *Grady* and made clear that *Blockburger* or the "same-elements" test is the correct test to be applied when considering a double jeopardy claim in the context of a subsequent prosecution.  *Dixon*, 509 U.S. at 696.

*Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)), "not a constitutional test in and of itself," *McCloud v. Deppisch,* 409 F.3d 869, 875 (7th Cir.2005), *as quoted in Palmer v. Haviland,* 273 Fed.Appx. 480, 486 (6th Cir.2008) (unpublished); *see Hunter,* 459 U.S. at 368, 103 S.Ct. 673 (explaining that the *Blockburger* test, as modified by subsequent precedent, "is not a constitutional rule requiring courts to negate clearly expressed legislative intent"). As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *697 *Johnson,* 467 U.S. at 499 n. 8, 104 S.Ct. 2536; *accord Hunter,* 459 U.S. at 368–69, 103 S.Ct. 673.

*Volpe v. Trim*, 708 F.3d 688, 696-697 (6th Cir. 2013).

Thus, "[i]n contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government." *Person*, 527 Fed. Appx. at 423 (citing *Volpe*, 708 F.3d at 697). In Ohio, to determine whether the legislature intended to authorize cumulative punishments, courts apply O.R.C. § 2941.25 (Ohio's multiple counts statute). *Volpe*, 708 F.3d at 697.

In *Ashe v. Swenson*, the Supreme Court was presented with the question of whether collateral estoppel "is a part of the Fifth Amendment's guarantee against double jeopardy." 397 U.S. 436, 442 (1970). The Supreme Court explained that collateral estoppel means that, "when an issue of ultimate fact has once been determined by a valid final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443. The Supreme Court held that collateral estoppel, "is embodied in the Fifth Amendment guarantee against double jeopardy." *Id.* at 445. The Supreme Court then concluded that the second prosecution of *Ashe* constituted a violation of the Fifth Amendment guarantee against double jeopardy.[14] *Id.* at

---

[14] In *Ashe*, the defendant was charged and tried for robbery of one of multiple victims at a poker game. 397 U.S. at 439. The jury found the defendant not guilty due to insufficient evidence. *Id.* The state later tried defendant for the

445-447.

Townsend appears to be arguing that, because the jury heard testimony regarding her failure to display license during her failure to comply and resisting arrest trial after the failure to display charge had been dismissed, her Fifth Amendment right against double jeopardy was violated.  However, she was not prosecuted a second time for failure to display her license.  Further, she has not shown that Sec. 435.06 (failure to display license) and O.R.C. § 2921.331 (failure to comply) contain the "same-elements" or that the Ohio legislature did not intend multiple punishments for the offenses charged.

Also, in the failure to comply and resisting arrest trial, there was no relitigation of factual issues resolved in the proceedings dealing with Townsend's failure to produce her license.  Thus, unlike in *Ashe*, here there was no double jeopardy violation.  The ultimate issue of fact determined in the first proceeding relating to the failure to display license charge was not whether Townsend had failed to comply with an order of a police officer not to leave her van unattended and it was not whether Townsend had resisted arrest by pushing officers away and running.  Furthermore, in the failure to comply and resisting arrest case, the jury found Townsend guilty as charged in the complaint.  Doc. 18-1, pp. 319:18-25, 320:1-9.  The complaint for failure to comply contained a "to wit" clause indicating Townsend "left van unattended and refused to move van 30 minutes at airport" (Doc. 18-1, p. 20) and the complaint for resisting arrest contained a "to wit" clause indicating Townsend "pushed officers away and ran" (Doc. 18-1, p. 19).  Thus, Townsend's contention that, since the jury heard testimony that she failed to produce her license to the officer, the jury might have convicted her for an offense

---

robbery of another victim at the poker game.  *Id.*  The jury found the defendant guilty.  *Id.* at 440.  The defendant challenged his conviction on double jeopardy grounds.  *Id.*  The Supreme Court concluded held that the second prosecution for the same robbery but for a different victim was barred by the double jeopardy clause because the issue of whether the defendant was one of the robbers at the poker game had been decided in the first prosecution. *Id.* at 445-446. The state had conceded in *Ashe* that the first trial was "no more than a dry run for the second prosecution."  *Id.* at 447.

for which she was previously found not guilty is not supported by the record. To the contrary, the record is clear that the jury found Townsend guilty as charged in the complaints. As indicated above, those complaints pertained to issues not before the court in the proceeding regarding the charge of failure to display license.

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Ground One as procedurally defaulted and/or **DENY** Ground One on the basis that the City's prosecuting Townsend for failure to comply and resisting arrest after dismissal of a failure to display license charge did not violate her Fifth Amendment double jeopardy rights.

### 2. Ground Two

**Ground Two**: A Trial Court's denial of a motion to dismiss based on due process rights of the XIV Amendment following a request for discovery and failure to preserve evidence is a violation of a defendant's rights.

**Supporting Facts**: On June 20, 2012, the day after arraignment for Case No. 2012CRB018014, Ms. Townsend filed a request for discovery. On July 10, 2012, she filed a motion to preserve evidence. On September 11, 2012, the trial court addressed these issues. The City stated that the video has been destroyed, if one ever existed. The trial court denied the motion to preserve. On October 2, 2012, the defense filed a motion to dismiss based upon destroyed video evidence. On October 28, 2012, the trial Court denied the motion to dismiss.

Doc. 1, p 7.

Townsend presented Ground Two as her third assignment of error in her appeal to the state court of appeals (Doc. 18-1, pp. 373, 379-382) and as her second proposition of law in her memorandum in support of jurisdiction filed with the Supreme Court of Ohio (Doc. 1-3, pp. 3, 12-14). Respondents contend that Ground Two is without merit.

The state court of appeals considered Townsend's claim but found no constitutional error. The Supreme Court of Ohio declined jurisdiction. Doc. 1-3, p. 16. In rejecting Townsend's claim that her Fourteenth Amendment rights were violated as a result of the trial court's denial of

her motion to dismiss based on a failure to preserve evidence, the Eighth District Court of

Appeals stated:[15]

> {¶ 20} On July 10, 2012, Townsend filed a motion to preserve evidence, requesting the city preserve "any and all videotapes, audiotapes, DVD that may not have been used in charging the defendant." Prior to trial, Townsend moved the court to dismiss the case, arguing that the city had destroyed materially exculpatory evidence, and in the alternative, that the city had, in bad faith, destroyed potentially useful evidence. Townsend's argument concerns video surveillance evidence made by Cleveland Hopkins Airport that would have recorded Townsend's interactions with Officer Zubek on June 2, 2012.

> {¶ 21} The suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith. *State v. Geeslin,* 116 Ohio St .3d 252, 254, 2007–Ohio–5239, 878 N.E.2d 1, citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.* at 485.

> {¶ 22} This court has previously held that the possibility that evidentiary material could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality. *State v. Durham,* 8th Dist. Cuyahoga No. 92681, 2010–Ohio–1416, ¶ 12, citing *Arizona v. Youngblood,* 488 U.S. 51, 56, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). "A clear distinction is drawn by *Youngblood* between materially exculpatory evidence and potentially useful evidence. If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *Geeslin* at 254. Therefore, when evidence is only potentially useful, its destruction does not violate due process unless the police acted in bad faith when destroying the evidence. *State v. Miller,* 161 Ohio App.3d 145, 2005–Ohio–2516, 829 N.E.2d 751 (2d Dist.).

> {¶ 23} The term "bad faith" generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another. *Durham* at ¶ 13, citing *State v. Smith,* 2d Dist. Montgomery No. 20247, 2005–Ohio–1374, ¶ 7.

---

[15] One of the state court of appeals' judges dissented as to the third assignment of error.  Doc. 18-1, pp. 383-388.

{¶ 24} In *Durham,* this court examined a situation where an alleged criminal incident was caught on videotape but no one viewed the videotape before it was erased. We noted that the videotape evidence might have been inculpatory or exculpatory or a combination of the two. We, therefore, held that the defendant was unable to demonstrate that the evidence was materially exculpatory, and we treated the erased video as only potentially useful.

{¶ 25} The holding in *Durham,* 8th Dist. Cuyahoga No. 92681, 2010–Ohio–1416, controls in this case as well. None of the parties viewed the video evidence prior to Cleveland Hopkins Airport erasing or recording over the incident. Furthermore, Officer Zubek testified that the cameras outside the airport are not fixed on one location and, as such, may not have recorded the incident at all. Pursuant to *Durham,* we cannot treat the missing video as materially exculpatory.

{¶ 26} Because the video does not qualify as materially exculpatory evidence, our inquiry turns to whether it would be potentially useful and whether the video was destroyed in bad faith. Although there is no question in this instance that the video would have been potentially useful to the extent that it might have recorded all or at least a portion of Townsend's encounter with Officer Zubek, there is no evidence in the present case that the video was destroyed in bad faith. Officer Zubek testified that Cleveland Hopkins Airport retains video surveillance for 17 days before the video is either deleted through their system or copied over digitally. Townsend did not file her motion to preserve evidence until 38 days after the incident, well after the airport destroyed the video. At a hearing on this motion, the city prosecutor indicated that he had requested the video from Cleveland Hopkins Airport and that the airport reported that no video was available.

{¶ 27} Although we find it troubling that neither the police nor the city bothered to make an earlier effort to inquire into the existence of potential video evidence prior to Townsend filing a motion to preserve evidence, we cannot say the facts of this case demonstrate a dishonest purpose, moral obliquity, or conscious wrongdoing on the part of the city such that bad faith is established. *See, e.g., State v. Gatliff,* 12th Dist. Clermont No. CA2012–06–045, 2013–Ohio–2862, superceded on other grounds (finding no bad faith where the state failed to preserve potentially useful video evidence that was destroyed by a restaurant in the ordinary course of business).

{¶ 28} Townsend's third assignment of error is overruled.

*Cleveland v. Townsend*, 2013 WL 6571825, * 4-6.

Since the state appellate court adjudicated Townsend's claim on the merits, AEDPA

deference is due the state court's determination.  Under the AEDPA standard of review, in order

to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby*, 132 S. Ct. at 27 (quoting *Harrington*, 131 S. Ct. at 786–87). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). Considering this highly deferential standard, Townsend has not shown that the state court's determination was contrary to or an unreasonable application of clearly established federal law.

Townsend appears to rely upon state of Ohio cases shifting the burden to prove that lost or destroyed evidence is materially exculpatory away from the defendant and to the state to show that the evidence was not exculpatory in instances where a defendant has moved to have evidence preserved but the evidence is destroyed in accordance with a state's normal procedures. Doc. 1-5, p. 35. However, in order to show entitlement to federal habeas relief a petitioner must demonstrate that a state court's adjudication is contrary to clearly established federal law, not state law. Thus, Townsend's reliance on state law cases such as *State v. Benton*, 136 Ohio App.3d 801 (6th Dist. 2000) to argue for federal habeas relief is misplaced. Also, although Townsend takes issue with the state court of appeals' lack of reference to her discovery request that was filed prior to her motion to preserve evidence (Doc. 1-5, pp. 39), considering the highly deferential AEDPA standard that applies to this Court's review of Townsend's claim in Ground Two, Townsend has not shown that the state court of appeals' determination that the City did not

act in bad faith regarding evidence that was not exculpatory but rather only potentially useful was contrary to or an unreasonable application of clearly established federal law.

Based on the foregoing, the undersigned recommends that the Court **DENY** Ground Two.

### 3. Ground Three

**Ground Three**:  The trial court violated Defendant's due process of law guaranteed by the XIV Amendment in denying her Motion to Dismiss for Vindictive Prosecution.

**Supporting Facts**:  Ms. Townsend filed a Motion to Dismiss Case No. 2012TRC033289.  She successfully had the case dismissed and was acquitted. Outside the post-trial setting, the city filed additional charges of Failure to Comply and Resisting Arrest in Case No. 2012CRB018014.

Doc. 1, p 8.

Townsend raised Ground Three as her first assignment of error in her direct appeal to the state court of appeals.  Doc. 18-1, pp. 333, 337.  However, as found by the state court of appeals, Townsend did not file a motion to dismiss based on vindictive prosecution with the trial court and therefore concluded that Townsend had not preserved the issue for appellate review. *Cleveland v. Townsend*, 2013 WL 6571825, * 2-3.   The state court of appeals further concluded that, even if Townsend had preserved her claim, her claim would be without merit.  *Id.*

Since Townsend failed to comply with state procedural rules necessary to preserve her claim that there was defect in the institution of the prosecution or indictment and the state court of appeals enforced the procedural bar,[16] Townsend's claim in Ground Three is subject to procedural default unless she can demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default, which she has not done. *Coleman*, 501 U.S. at 750.

---

[16] Townsend committed a second procedural default of Ground Three because she did not raise her vindictive prosecution claim in her memorandum in support of jurisdiction filed with the Supreme Court of Ohio. *See* Doc. 1-3 (raising only propositions of law regarding trial court's denial of motion to dismiss based on Double Jeopardy Clause and motion to dismiss based on failure to preserve evidence).

Accordingly, the undersigned recommends that the Court **DIMISS** Ground Three as procedurally defaulted.

    **4. Ground Four**

> **Ground Four**:  The trial court committed plain error in instructing the jury in violation of Defendant's 5th Amendment right against double jeopardy and the affirmative defense of excessivve force.
>
> **Supporting Facts**:  The trial court did not instruct the jury on the order in which the jury would unanimously have to find Ms. Townsend was accused of failing to comply with.  Nor did the trial Court properly instruct the jury on the affirmative defense of resisting arrest.

Doc. 1, p. 10.

In Ground Four, Townsend raises two separate challenges to the jury instructions.  She argues that the trial court did not properly instruct the jury on the affirmative defense of excessive force to the charge of resisting arrest.  Doc. 1, pp. 10, 29-30.  She also argues that the trial court did not properly instruct the jury with respect to the failure to comply charge.  Doc. 1, pp. 10, 24-29.

### *Affirmative defense of excessive force*

Townsend did include an argument regarding excessive force in her application for reconsideration filed with the state court of appeals (Doc. 18-1, pp. 366-367) but she did not include the claim in her assignments of error raised in her direct appeal or in her memorandum in support of jurisdiction when seeking review by the Supreme Court of Ohio.  Since Townsend did not present her affirmative defense claim portion of Ground Four to the state court of appeals as an assignment of error or in her memorandum in support of jurisdiction filed with the Supreme Court of Ohio, her claim may be subject to procedural default unless she can demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default, which has not done. *Coleman*, 501 U.S. at 750; *see also Baston*, 282

F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *Moreland*, 50 Ohio St.3d at 62 (failure to present a claim to a state court of appeals constituted a waiver).

Even if not procedurally defaulted, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  "[A] federal [habeas] court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  "[A] 'mere error of state law' is not a denial of due process." *Engle v. Issac*, 456 U.S. 107, 121, n. 21 (1982).  Generally, "errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981).  Here, the record reflects that Townsend requested a jury instruction regarding the affirmative defense of excessive force (Doc. 18-1, pp. 30, 37) and the trial court did instruct the jury on the affirmative defense of excessive or unnecessary force. (Doc. 18-1, pp. 309-311).[17]  In particular, the trial court instructed the jury as follows:

> The defendant is asserting an affirmative defense known as excessive or unnecessary force.
>
> The burden of going forward with the evidence of excessive or unnecessary force and the burden of proving an affirmative defense are upon the defendant.  She must establish such a defense by a preponderance of the evidence.
>
> ***
>
> The defendant claims that the police officer used excessive or unnecessary force

---

[17] Townsend also argues that the trial court failed to instruct the jury that it had to decide whether the arrest was lawful and that the trial court failed to instruct the jury as to what constitutes an arrestable offense. Doc. 1-5, p. 30; Doc. 25-2, p. 16.  As with her argument regarding the excessive force jury instruction, this argument was not raised in her appeal to the state appellate court or Supreme Court of Ohio.  Also, contrary to Townsend's claim, the trial court instructed the jury that it must find that she resisted or interfered with a lawful arrest. *See* Doc. 18-1, pp. 238-239 ("[Y]ou must find beyond reasonable doubt that . . . Townsend, did recklessly or by force resist or interfere with the <u>lawful</u> arrest of herself or another.") (emphasis supplied).

in arresting her.  Excessive or unnecessary force means more force than necessary under the circumstances to arrest the defendant.

Doc. 18-1, pp. 309-311.

Based on the foregoing, Townsend's claimed error regarding an affirmative defense jury instruction is without merit and/or not cognizable on federal habeas review.

### Failure to comply jury instructions

In reviewing Townsend's claim that the trial court erred by not instructing the jury that she could not be found guilty of the failure to comply charge based on her refusal to provide her driver's license, the state court of appeals found that Townsend had not objected to the jury instructions.  *Cleveland v. Townsend*, 2013 WL 6571825, * 3.  Townsend does not oppose the state court of appeals' determination that there was no objection to the jury instructions.  Doc. 1-5, p. 25 ("While trial counsel did not object to the form of the instructions . . .").  Since Townsend failed to comply with state procedural rules necessary to preserve an alleged defect in the jury instructions, Townsend's claim in Ground Three regarding the failure to comply jury instructions may be subject to procedural default unless she can demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default, which she has not done. *Coleman*, 501 U.S. at 750.

Moreover, even if Townsend has not procedurally defaulted her claim regarding an alleged error as to the failure to comply jury instructions, as explained below, her claim is not cognizable on federal habeas review.  As indicated above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *See Estelle*, 502 U.S. at 67-68.  Rather, "a federal [habeas] court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  Since "it is not the function of a federal habeas court to correct errors in state law," a request for habeas relief based

on a state court's failure to give a jury instruction is warranted only "under the most unusual circumstances." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) (en banc); *see also Shelton v. Seabold*, 198 F.3d 247, *2 (6th Cir. 1999) (unpublished) ("[W]hen the evidence presented at trial does not support a particular jury instruction, based upon a state court's interpretation and application of state law, an alleged error predicated upon that particular jury instruction is not cognizable in federal habeas corpus review unless the failure amounted to a fundamental miscarriage of justice.") (citing *Bagby*, 894 F.2d at 795).

Because Townsend did not object to the jury instructions, the state court of appeals reviewed the claim for plain error only. *Id.* The state court of appeals found that:

> {¶ 18} . . . The failure to comply charge in the complaint against Townsend specifically contains a "to wit" clause, alleging that Townsend failed to comply in that she "left van unattended and refused to move van 30 minutes at airport. In contrast, Townsend's failure to provide her license is not charged in the complaint. Furthermore, the testimony elicited at trial pertained to Officer Zubek's authority to direct and regulate traffic. There was no testimony offered regarding his lawful authority to demand Townsend's driver's license. Consistent with this, the trial court's jury instructions on the failure to comply charge included an instruction regarding the officer's authority to direct and regulate traffic. There was no instruction provided regarding the officer's lawful authority to demand Townsend's license. Finally, the jury verdict indicates that the jury found Townsend guilty of failure to comply "as charged in the complaint." In light of these facts, we cannot say that the trial court's instructions resulted in plain error.

*Cleveland v. Townsend*, 2013 WL 6571825, * 4.

The state court of appeals' determination on a matter of state law is not for this Court's review and Townsend has not demonstrated a violation of her federal constitutional rights. The jury found Townsend guilty of failure to comply "as charged in the complaint" (Doc. 18-1, pp. 319-321) and, as the state court of appeals indicated, the complaint against Townsend for failure to comply contained a "to wit" clause, alleging that she failed to comply in that she "left van unattended and refused to move van 30 minutes at airport" (Doc. 18-1, p. 20).     Thus,

26

Townsend's claim that, because of defective jury instructions, she was convicted based on her failure to provide her license, the previously dismissed charge, is unfounded and she has failed to demonstrate that the jury instructions resulted in a violation of her federal constitutional right to a fair trial or a violation of the rights under the Double Jeopardy Clause.  Accordingly, her jury instruction claim is not cognizable on federal habeas review.

Based on the foregoing, the undersigned recommends that the Court **DISMISS** Ground Four as procedurally defaulted and/or not cognizable on federal habeas review.

### IV.    Conclusion and Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS** and/or **DENY** Townsend's Petition (Doc. 1).  Townsend's requests for an evidentiary hearing and discovery (Doc. 25-2, pp. 6-8) are **DENIED**.

Dated: September 29, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).